# In the United States Court of Federal Claims

OFFICE OF SPECIAL MASTERS
No. 14-762V
Filed: April 29, 2016

| | | |
|---|---|---|
| * * * * * * * * * * * * | * | UNPUBLISHED |
| KRISTINA GARRISON, | * | |
| | * | Special Master Gowen |
| Petitioner, | * | |
| | * | Interim Attorneys' Fees and Costs; |
| v. | * | Reasonable Hourly Rate; Forum |
| | * | Rate; Local Rate; Reasonable Hours |
| SECRETARY OF HEALTH | * | Expended |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * | | |

Curtis R. Webb, Twin Falls, ID, for petitioner.
Ryan D. Pyles, United States Department of Justice, Washington, DC, for respondent.

### DECISION ON INTERIM ATTORNEYS' FEES AND COSTS[1]

On August 22, 2014, Kristina Garrison ("petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[2]  Petitioner alleged that as a result of receiving a trivalent influenza ("flu") vaccination on October 28, 2011, she developed narcolepsy and cataplexy.  See Petition at ¶¶ 1, 2.  Further, petitioner alleged that she experienced residual effects of her injury for more than six months.  Id. at ¶ 16.

On August 2, 2015, respondent filed a Rule 4(c) Report and a motion for a decision on entitlement based on the record.  Respondent recommended against compensation in this case,

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services).  As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party:  (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to 34 (2012) ("Vaccine Act" or "the Act").  All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

1

but stated that she would "not expend further resources to contest entitlement in this matter." Respondent's ("Resp's") Report at 4. On October 29, 2015, I issued a Ruling on Entitlement, finding petitioner entitled to compensation. Petitioner has been in the process of collecting damages information since. See Status Report, filed March 1, 2016.

On January 7, 2016, petitioner filed an application for interim attorneys' fees and costs, requesting $62,086.50 in attorneys' fees, and $12,626.51 in attorneys' costs, for a total fees and costs award of $74,713.01. See Petitioner's ("Pet'r's") Application ("App.") at 1. Respondent filed a response in opposition to petitioner's application on March 1, 2016, objecting to the requested hourly rate and to certain hours billed. See Resp's Opposition ("Opp.") at 1. Petitioner filed a reply in support of her motion on March 11, 2016.

For the reasons set forth below, I award petitioner a total of **$69,427.76** for interim attorneys' fees and costs.

## I.   Discussion

Interim fee awards are permissible under the Vaccine Act. See Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, at 1352 (Fed. Cir. 2008); see also Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372 (Fed. Cir. 2010). Respondent has not objected to an award of interim fees in the present case, and I find an award of fees and costs at this time reasonable. Therefore, the only issue to be decided is the reasonable amount of fees and costs to be awarded.

### a.   Attorneys' Fees—Reasonable Hourly Rates

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera, 515 F.3d at 1349. Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Under the Vaccine Act, a reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Avera, 515 F.3d at 1347-48. In determining an award of attorneys' fees, a court should generally use the forum rate, i.e., the District of Columbia rate. Id. at 1348. However, an exception to the forum rule applies where the bulk of an attorney's work is performed outside of the forum, and where there is a "very significant" difference in compensation rates between the place where the work was performed and the forum. Id. at 1349 (citing Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Petitioner argues that her attorney, Curtis Webb, should be compensated at the forum rate, which she asserts is $415 per hour for an attorney of Mr. Webb's skill, experience, and reputation. Pet'r's App. at 4. Respondent argues that petitioner's counsel should be

compensated at the local rate for Twin Falls, Idaho, where Mr. Webb's office is located, because there is a very significant difference between the forum rate and local rates.  Resp's Opp. at 4.

      **i.   Local Rate**

**Mr. Webb's Previously Awarded Rate**

In her initial application, petitioner contended that the local rate for work performed by Mr. Webb in the years 2014 and 2015 is $285 per hour.  Pet'r's App. at 7.  Two special masters determined that $270 per hour was a reasonable local hourly rate for work performed by Mr. Webb in 2013.  Id. at 8 (citing Nuttall v. Sec'y of Health & Human Servs., No. 07-810V, 2014 WL 643584 (Fed. Cl. Spec. Mstr. Jan. 23, 2014); Barclay v. Sec'y of Health & Human Servs., No. 07-605V, 2014 WL 2925245 (Fed. Cl. Spec. Mstr. Feb. 7, 2014)).  In Nuttall, Mr. Webb requested an hourly rate of $250 for work performed in 2011, and respondent did not object.  Nuttall, 2014 WL 643584, at *4.  The special master found a $10 per hour yearly increase reasonable for both 2012 and 2013 based "in part by rises in the cost of living, and in part because of [his] favorable view of the high quality of Mr. Webb's work in general."  Id.  The special master did not discuss how $250 was determined to be a reasonable hourly rate for 2011.  In Barclay, Mr. Webb requested a rate of $240 per hour for work performed in 2008 through 2010, and respondent did not object.  Barclay, 2014 WL 2925245, at *3.  The special master found a $10 per hour yearly increase reasonable for 2011, 2012, and 2013, as such an increase "appear[ed] to approximate the rate of inflation."  Id. at *3-*4.  The basis for finding a rate of $240 per hour reasonable for work performed in 2010 was not discussed.  In Mr. Webb's affidavit filed in the present case, he states that "[t]he $250 an hour rate for 2011 was based on the rates charged by attorneys who practice in Twin Falls, Idaho and have experience and reputations similar to my own."  Pet'r's App., Affidavit of Curtis R. Webb, at ¶ 18.  He attached an affidavit from a Twin Falls attorney, prepared in 2011, stating that $250 per hour was a reasonable 2011 rate for Twin Falls, Idaho.  Id., Attachment C.

Petitioner states that the 2013 rate of $270 per hour should be adjusted by a 3.7% annual increase beginning in 2014.  Pet'r's App. at 8.  This percentage, based upon the Real Rate Report[3] submitted by respondent in McCulloch, represents the annual rate of growth in attorneys' fees since the 2008 recession, and was applied to determine hourly rate increases in McCulloch.  Id. (citing McCulloch, No. 09-293V, 2015 WL 5634323, at *16 (Fed. Cl. Spec. Mstr. Sept. 1, 2015)).  Applying this increase, petitioner states that local hourly rates were $280 in 2014 and $290 in 2015.  Petitioner then averages the 2014 and 2015 rates and concludes that Mr. Webb's local rate for 2014-2015 would have been $285 per hour for both years.  Id.  Respondent argues that the local rate should be adjusted using the Consumer Price Index (CPI), as reported by the Bureau of Labor Statistics,[4] which the court has used previously.  Resp's Opp. at 4 (referencing Scharfenberger v. Sec'y of Health & Human Servs., No. 11-221V, 2015 WL

---

[3] The Real Rate Report was a study of attorney billing rates to corporate clients and stated in its executive summary that attorney rates have increased by an average of 3.7% since 2008.  See McCulloch, 2015 WL 5634323, at *9.  Prior to that the rate increase had been higher.  Id.

[4] Bureau of Labor CPI calculator available at http://www.bls.gov/data/inflation_calculator.htm.

3526559, at *6 (Fed. Cl. Spec. Mstr. May 15, 2015)).  Using this method, $270 in 2013 would be equivalent to $275 in 2015.  Id.

I agree with petitioner that 3.7% is an appropriate annual adjustment to apply to previously awarded local rates in order to determine a reasonable 2014-2015 rate.  Although some special masters have adjusted rates using the CPI, I adjusted rates according to the 3.7% annual rate of growth in attorneys' fees in McCulloch, and would apply the same adjustment in the present case.  See McCulloch, 2015 WL 5634323, at *16.  Accordingly, if local rates are determined by adjusting the previously awarded $270 per hour local rate in vaccine cases, a reasonable local rate for work performed in 2014-2015 would be $285 per hour.

### Recent Idaho District Court Rates

In her reply brief, however, petitioner submitted evidence of higher local rates awarded in 2014 by the United States District Court for the District of Idaho.  See Pet'r's Reply at 3-5.  In two civil rights cases in 2014, the court awarded $400 per hour to attorneys with 21, 28, and 34 years of experience.  See Latta v. Otter, No. 1:13-CV-00482, 2014 WL 7245631, at *1-*4 (D. Idaho, Dec. 19, 2014) (facial constitutional challenge to Idaho laws that defined marriage as the legal union between a man and a woman); Community House, Inc. v. City of Boise, No. 1:05-CV-00283, 2014 WL 1247758, at *6-*7 (D. Idaho, Mar. 25, 2014) (violations of the Fair Housing Act, Idaho and United States Constitutions, and various laws of the State of Idaho). Latta and Community House both involved an award of attorneys' fees under federal statutes allowing the court to award reasonable attorneys' fees to the *prevailing* party.  See Latta, 2014 WL 7245631, at *1; Community House, 2014 WL 1247758, at *3.  Both cases involved a determination by the United States District Court for the District of Idaho of a reasonable rate "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Latta, 2014 WL 7245631, at *2 (quoting Blum, 465 U.S. at 895); Community House, 2014 WL 1247758, at *4.

Petitioner also cited two[5] slightly older cases from the United States District Court for the District of Idaho.  See Pet'r's Reply at 3-5 (citing J.R. Simplot Co. v. Nestle USA, Inc., No. CV 06-141-S-EJL-CWD, 2009 U.S. Dist. LEXIS 62439 (D. Idaho, July 20, 2009); LaPeter v. Canada Life Ins. of America, No. CV–06–121–S–BLW, 2007 WL 4287489 (D. Idaho, Dec. 4, 2007)).  In J.R. Simplot, the court awarded an attorney with 41 years of experience a rate of $300 per hour.  2009 U.S. Dist. LEXIS 62439, at *2, Attachment A.  In LaPeter, the court awarded an

---

[5] Petitioner also cited United States ex rel. Suter v. National Rehabilitation Partners, Inc., No. CV–03–15–S–BLW, 2007 WL 2790397 (D. Idaho, Sept. 24, 2007).  In Suter, the court did not specify a reasonable rate for each attorney, but rather noted that it appeared Boise rates were approximately half as much as the rates charged, and reduced the entire bill by half.  2007 WL 2790397, at *3-*4.  This effectively reduced the billing rate of a senior partner from Los Angeles with 25 years of experience from $720 per hour to $360 per hour.  Id.  Unlike the other cases cited, fees were not awarded to the prevailing party.  Rather, fees were awarded pursuant to Federal Rule of Civil Procedure 37(b)(2), which provides that "if a party fails to obey [a discovery order], 'the court in which the action is pending may make such orders in regard to the failure as just.'"  2007 WL 4287489, at *2.  Suter did not involve a fee-shifting statute directly comparable to the Vaccine Act or the statutes that Laffey Matrix rates are generally used for, and will therefore not be discussed further.  See *supra*.

attorney with over 30 years of experience a rate of $350 per hour.  2007 WL 4287489, at *1-*2.  J.R. Simplot and LaPeter were breach of contract actions involving an award of attorneys' fees under Idaho Code § 12-120(3), which entitles the *prevailing* party to an award of reasonable attorneys' fees when a commercial transaction is the gravamen of the lawsuit.  See J.R. Simplot, 2009 U.S. Dist. LEXIS 62439, at *5; LaPeter, 2007 WL 4287489, at *1.  Both cases involved a determination of a reasonable hourly rate calculated "according to the prevailing market rates in the relevant community."  J.R. Simplot, 2009 U.S. Dist. LEXIS 62439, at *27 (quoting Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 906 (9th Cir. 1995)); LaPeter, 2007 WL 4287489, at *1.

In vaccine cases, a reasonable hourly rate is the forum rate in Washington, D.C., unless "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" is very significantly lower.  Avera, 515 F.3d at 1347-48.  As an initial matter, I find that Twin Falls and Boise are part of the same "community" for purposes of evaluating prevailing local rates.  Twin Falls and Boise are both located in southern Idaho.  A comparative cost of living calculator for metropolitan areas, which I also consulted in McCulloch, shows a cost of living that is only 0.33% greater in Boise than in Twin Falls.[6]

The United States District Court for the District of Idaho cases support a finding that a reasonable local rate for Mr. Webb's work in 2014 and 2015 is higher than $285 per hour.  In my view, the judgment of federal judges located in Idaho should be awarded significant respect, particularly on an issue such as local attorney rates with which they are presumably familiar.  However, the rates awarded by the U.S. District Court for the District of Idaho do not support a finding that a reasonable local rate for Mr. Webb's work in vaccine cases would be $400 per hour.  Those rates were awarded under statutes that provide for an award of attorneys' fees to the *prevailing* party, whereas an attorney in the Vaccine Program is entitled to an award of attorneys' fees as long as the claim was brought in "good faith" and with a "reasonable basis."  See 42 U.S.C. § 300aa-15(e)(1).  Accordingly, the District Court rates are most appropriately compared to the Washington, D.C. Laffey Matrix rates.[7]  The Laffey Matrix was originally developed to evaluate fees in a complex employment discrimination case, and has since been republished annually by the United States Attorney's office for the District of Columbia for use in fee-shifting cases.  See Laffey v. Northwest Airlines, Inc., 572 F.Supp. 354 (D.D.C. 1983), affirmed in part, reversed in part on other grounds, 746 F.2d 4 (D.C.Cir. 1984).  The matrix is intended to be used in cases in which a "fee shifting" statute permits the prevailing party to recover "reasonable attorneys' fees."  The explanatory note to the updated Laffey Matrix references Civil Rights cases, Freedom of Information Act cases, and Equal Access to Justice Act cases by way of example. *Laffey Matrix—2014–2015 Explanatory Notes,* available at https://www.justice.gov/usao-dc/civil-division (last accessed Mar. 25, 2016).

---

[6] The Cost of Living Calculator, at http://www.bankrate.com/calculators/savings/moving-cost-of-living-calculator.aspx (last visited Apr. 14, 2016).

[7] The Laffey Matrix methodology has been revised starting with the 2015-2016 year, and the matrix is now titled the "USAO Attorney's Fees Matrix."  *USAO Attorney's Fees Matrix—2015—2016*, available at https://www.justice.gov/usao-dc/civil-division (last accessed Mar. 25, 2016).

When determining the appropriate forum rate for vaccine cases in McCulloch, I used the Laffey Matrix as a guidepost, but not as prima facie evidence of the appropriate rate. See McCulloch, 2015 WL 5634323, at *17-18. I concluded that the Laffey Matrix rates were more closely analogous to the type of litigation that occurs in vaccine cases than average Washington attorney fee rates, which were considerably higher. Id. I also concluded that the Laffey Matrix rates included a risk premium, as the fee shifting under the relevant statutes did not occur unless a case was won. Id. at *18. For attorneys with more than 20 years of experience, the Laffey rate is $520 per hour. Using the same frame work as the Laffey Matrix, I determined that an appropriate rate range for practitioners in the Vaccine Program with more than 20 years' experience was $350 to $425. Id. at *19. Thus, comparing the Laffey rate of $520 per hour for attorneys with 20 years' experience to the high end of the McCulloch range, $425 per hour, I effectively eliminated the risk premium by reducing the Laffey rate by approximately 18.3% for vaccine cases.[8]

### Analysis: Mr. Webb's Reasonable Local Rate

Upon review of the cases cited by petitioner, I have determined that the rates awarded in Latta, Community House, J.R. Simplot, and LaPeter are appropriate points of reference for determining Mr. Webb's local rate. Latta and Community House were civil rights cases where attorneys' fees were awarded to the prevailing party under fee shifting statutes, and thus are squarely within the type of cases to which Laffey Matrix rates would apply in Washington, D.C. J.R. Simplot and LaPeter involved a state fee shifting statute, which provided for the award of attorneys' fees to the prevailing party. Thus, although J.R. Simplot and LaPeter were breach of contract actions, rather than the type of case specifically referenced by the explanatory note to the Laffey Matrix, they involve a similar type of fee-shifting statute.

The District Court cases cited by petitioner vary in complexity of subject matter and procedure, but represent a range of complex litigation cases that I find to be generally of the same complexity as a vaccine case. In McCulloch, I noted that "[w]hile the *Laffey* case itself was quite complicated and heavily litigated, many of [the fee-shifting cases it is now used in] are not as complex as, or no more complex than, vaccine cases in terms of their subject matter and evidence." McCulloch, 2015 WL 5634323, at *18
I further explained:

> It is true that before fees are awarded in fee shifting cases there is the requirement that the case be won, that negligence or some other form of liability be proven (in addition to causation in personal injury cases), and that those cases include the array of available discovery devices provided under the Federal Rules of Civil Procedure. However, it should be noted that procedural tasks such as depositions and motions result in the billing of many additional

---

[8] This calculation represents the percentage by which the Laffey Matrix rate was *reduced* to arrive at vaccine case rates:

$$\% \text{ decrease} = [100 \text{ (Laffey rate} - \text{Vaccine rate)}] / \text{Laffey rate}$$

> hours, and thus the ultimate compensation in those cases is raised
> relative to vaccine cases by virtue of the number of hours billed
> rather than necessarily the hourly rate.

Id. In vaccine cases, petitioner does not need to prove negligence or a constitutional violation, but does need to address difficult issues of causation.

In both Latta and Community House, the court noted that the $400 per hour fee award was reasonable based in part on the complex nature of the issues presented. Latta, 2014 WL 7245631, at *3-*4; Community House, 2014 WL 1247758, at *5-*6. In Latta, the court stated that the $400 per hour rate was "at the high end of the range for experienced complex litigation attorneys in the Boise market," but was reasonable based on factors such as "the complexity of the case, its undesirability relative to more typical legal work, the delay in payment, and rates allowed in similar cases." 2014 WL 7245631, at *3-*4. In Community House, the court found the rate reasonable based on "the length, complexity, and the unlikelihood that Boise attorneys would have endeavored to take a case like this one; [the attorney's] experience and national recognition; as well as the Court's decisions in prior cases . . . ." 2014 WL 1247758, at *6. In both cases, the court considered testimony that there were few attorneys in Idaho that are willing or able to take those types of civil rights cases. See Latta, 2014 WL 7245631, at *3; Community House, 2014 WL 1247758, at *6. Community House was also procedurally complex—the case was filed in 2005, and "involved complex motion practice, an injunction, and two interlocutory appeals before it ever reached a jury," as well as "three judges and two Ninth Circuit Panels." Id. at *6. Latta, on the other hand, was filed in 2013, "proceeded quickly on a legal track, and was decided on summary judgment after oral argument." 2014 WL 7245631, at *1. An appeal was filed, and was ongoing at the time of the attorneys' fees decision. Id. at *1 n.1.

In contrast, J.R. Simplot and LaPeter did not involve particularly complex subject matter. In J.R. Simplot, the court noted that although the "document production and organization may have been intensive, the legal issues presented—breach of contract, fraud, and the like—were not particularly novel or complex." 2009 U.S. Dist. LEXIS 62439, at *34. The rates awarded "represent[ed] the upper end of the range for attorneys in the Boise area with similar skill and expertise." Id. at *31. Similarly, in LaPeter, the court stated that "[t]he nature of this case, essentially a breach of contract case, was not exceptional," and the case was "more akin to the ordinary personal injury case." 2007 WL 4287489, at *3. The rates awarded were reasonable "[b]ased on the Court's knowledge of typical attorney rates in the Boise area." Id. at *2. J.R. Simplot was decided on summary judgment after "protracted litigation," and LaPeter was also decided on summary judgment. J.R. Simplot, 2009 U.S. Dist. LEXIS 62439, at *1; LaPeter, 2007 WL 4287489, at *1.

In Latta and J.R. Simplot, the court noted that the rates awarded represented the high end of reasonable rates for attorneys with similar skill and experience. I find it appropriate to award Mr. Webb a rate based on the high end of local rates. In Latta and Community House, the court considered the fact that it was unlikely another attorney would have been able or willing to take the claims at issue. There are only a few attorneys in Idaho and other western states (other than

7

California and Washington), who take vaccine cases.[9]  Among vaccine practitioners, Mr. Webb has significant experience in the Program.  He has 27 years of experience representing more than 275 petitioners in the National Vaccine Injury Compensation Program.  Pet'r's App. at 9.  In addition, he served on the Advisory Committee on Childhood Vaccines (ACCV) from 1992 to 1995, and is currently a member of the Vaccine Committee of the Advisory Council to the United States Court of Federal Claims.  Id. at 8-9.  Special Masters have noted that his work is of high quality.  Id. at 9 (citing Nuttall, 2014 WL 643584, at *4; Thorne-Erickson v. Sec'y of Health & Human Servs., No. 96-361V, 1999 WL 1268149, at *5 (Fed. Cl. Spec. Mstr. Dec. 10, 1999)).

I conclude that the rates awarded in Latta, Community House, LaPeter, and J.R. Simplot suggest that a reasonable local rate for complex litigation matters similar to Laffey Matrix cases for Idaho attorneys with over 20 years of experience in 2014 and 2015 is approximately $400 per hour.[10]  As discussed above, however, to determine a reasonable local rate for vaccine work, the local rate of $400 per hour based on the District Court fee-shifting cases must be adjusted to take into account the fact that Vaccine Program attorneys may be awarded attorneys' fees regardless of whether petitioners prevail on the underlying claim.  See 42 U.S.C. § 300aa-15(e)(1).  In McCulloch, I effectively eliminated the risk premium by reducing the Laffey rate by approximately 18.3% for vaccine cases.  In this case, reducing the $400 per hour rates awarded to Idaho attorneys for civil rights cases by 18.3% yields an hourly rate of $327 per hour.[11]

**Accordingly, I conclude that a reasonable local rate for Mr. Webb's work performed in 2014 and 2015 is $327 per hour.**

### ii.   **Local Versus Forum Rate**

Petitioner next argues that there is not a "very significant" difference between the local rate for Twin Falls, Idaho, and the forum rate, and that the forum rate should therefore be awarded.  Pet'r's App. at 8 (citing Davis County, 169 F.3d at 757; Avera, 515 F.3d at 1349-50).  Respondent asserts that there is a very significant difference between the local rate and the forum rate.  Resp's Opp. at 5.  Respondent cites several cases in which the court has applied the Davis

---

[9] See the List of Vaccine Attorneys, available on the United States Court of Federal Claims website, at http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters.  There is listed one attorney in each of Idaho, Wyoming, and Utah, and none in Colorado, Montana, or New Mexico.

[10] Latta and Community House awarded rates of $400 per hour in 2014.  J.R. Simplot awarded $300 per hour in 2009, and LaPeter awarded $350 per hour in 2007.  As discussed above, I have previously found that 3.7% is an appropriate annual adjustment to apply.  I note that if the 2007 rate of $300 per hour and the 2009 rate of $350 per hour were adjusted yearly based on a 3.7% rate of increase, the 2014-2015 rate would actually be *greater* than $400 per hour.

[11] Again, as in McCulloch, this calculation represents the *reduction* of the District Court rate by 18.3% to arrive at Mr. Webb's rate, and is based on the following formula:

**Mr. Webb's rate = Idaho D. Court rate - [Idaho D. Court rate (.183)]**

exception in cases with rate differences purportedly comparable to the present case. Id. at 6 (citing Masias v. Sec'y of Health & Human Servs., 634 F.3d 1283, 1286 (Fed. Cir. 2011)(affirming an award based on local rates for Cheyenne, Wyoming, of $220 per hour in 2008, when the forum rate would have likely been $350 per hour, a 59% difference); Mooney v. Sec'y of Health & Human Servs., No. 05-266V, 2014 WL 7715158, at *9 (Fed. Cl. Spec. Mstr. Dec. 29, 2014)(awarding a local rate of $275 per hour in Baton Rouge, Louisiana in 2014); O'Neill v. Sec'y of Health & Human Servs., No. 08-243V, 2015 WL 2399211, at*4-*5 (Fed. Cl. Spec. Mstr. Apr. 28, 2015)(awarding a local rate of $300 per hour from 2011-2013 in Sarasota, Florida).

I find that the difference between the local rates in Twin Falls, Idaho, and forum rates in Washington, D.C. in this case is not "very significant," and therefore Mr. Webb's hourly rate should be determined by reference to forum rates. In Avera, the Federal Circuit adopted the Davis County exception to the forum rule that "'where the bulk of [an attorney's] work is done outside the jurisdiction of the court and where there is a *very significant* difference in compensation favoring D.C.,'" local rates apply. Avera, 515 F.3d at 1349 (quoting Davis County, 169 F.3d at 758). As noted by petitioner, in Davis County, the D.C. rate sought was approximately 70% higher than local rates. Davis County, 169 F.3d at 757. In Avera, the requested D.C. rate of $598 per hour was "nearly three times" the local rate of $200—199% greater. Avera, 515 F.3d at 1350. The rate differences in Davis County and Avera are clearly very significant, but those decisions do not provide guidance on where to draw the line as to what constitutes a "very significant" difference in less extreme cases.

The cases cited by respondent do not provide very much insight into the question of what constitutes a "very significant" difference. In Masias, the special master awarded local rates where there was a 59% difference between local and forum rates. 634 F.3d at 1286-87. In Mooney, the special master did not make a determination whether there was a "very significant" difference, as she concluded that the parties had *conceded* that the Davis County exception applied because the only evidence presented was focused on local Baton Rouge rates. 2014 WL 7715158, at *3. In O'Neill, the special master stated that "the local rates applicable in Sarasota, Florida . . . are significantly lower than those applicable in the forum," and found that local rates applied to the work performed in Florida. 2015 WL 2399211, at *4. However, petitioner did not seek the forum rates for the Florida attorneys, but rather sought only forum rates for attorneys in the firm's D.C. office. Id. Furthermore, it is difficult to determine what difference the special master found "very significant," as the Florida attorneys to whom $300 per hour was awarded had at least 17 years of experience, whereas the D.C. attorneys to whom $325 and $295 per hour were awarded had 8 and 3 years of experience, respectively. Id. at *5-*7.

In this case, the median forum rate of $387.50 per hour is only 18.5% greater than a local rate of $327 per hour. I also note that even when calculated differently, the rate difference remains low. The *requested* forum rate of $415 is 26.9% higher than a $327 local rate, and the highest-end McCulloch rate for attorneys with more than 20 years of experience, $425, is 30% higher.[12] In Avera, the Federal Circuit did not say that the forum rate should be used except

---

[12] In Davis County, the court determined that the forum rate was 70% *higher* than the local rate, and in Avera the court determined that the forum rate was nearly three times *higher* than the local rate. In Masias, where the local rate was $220 per hour and the forum rate was $350 per hour, the special master

9

when the local rate is "different" or even "significantly different." Rather, the court said the forum rate should be used except where the local rate is "*very significantly* different." The cases in which very significant differences have been found were based on rate differentials higher than the difference in this case, as explained above. Therefore, I have concluded that the Twin Falls, Idaho rate is different, but not *very significantly* so, from the forum rate range in McCulloch. **The local Twin Falls, Idaho, rate is not very significantly different than the Washington, D.C. forum rate, and Mr. Webb should receive the forum rate.**

### iii. Forum Rate

In McCulloch, I found $350 to $425 to be a reasonable rate range for attorneys with more than 20 years of experience, depending on the special master's judgment of the attorneys' years of experience in practice and in the Vaccine Program in particular, quality of advocacy in vaccine cases, and reputation in the legal community and community at large. McCulloch, 2015 WL 5634323, at *17-*19.

Petitioner asserts that Mr. Webb should be compensated at $415 per hour, given that Mr. Webb has 31 years of experience in the legal profession, and 27 years of experience representing more than 275 petitioners in the National Vaccine Injury Compensation Program. Pet'r's App. at 9. In addition, he served on the Advisory Committee on Childhood Vaccines (ACCV) from 1992 to 1995, and is currently a member of the Vaccine Committee of the Advisory Council to the United States Court of Federal Claims. Id. at 8-9. Special Masters have noted that his work is of high quality. Id. (citing Nuttall, 2014 WL 643584, at *4; Thorne-Erickson v. Sec'y of Health & Human Servs., No. 96-361V, 1999 WL 1268149, at *5 (Fed. Cl. Spec. Mstr. Dec. 10, 1999)).

Respondent argues that the Davis County exception was designed to prevent windfalls for attorneys practicing in substantially less costly home markets. Resp's Opp. at 5. The court in Davis County addressed "situations like the one we face, where out-of-jurisdiction lawyers would receive substantially higher rates than they ordinarily command for work done almost exclusively in their home territory." Davis County, 169 F.3d at 758. It created the "*very significant* difference in compensation favoring D.C." rule to address the situation where a non-D.C. attorney would be "vastly overcompensated" if D.C. forum rates applied. Id. (emphasis in original). As discussed above, based on the decisions of the United States District Court for the District of Idaho, it appears that Mr. Webb would be able to obtain rates comparable to McCulloch rates for work in fee-shifting cases in Idaho. The range of $350 to $425 found in McCulloch was designed to allow considerable discretion to the special masters to determine an appropriate forum rate, and contemplated a "multi-factorial" analysis. McCulloch, 2015 WL

---

found that there was a 59% difference between local and forum rates. These cases calculate the "difference" in rates based on the percentage by which the forum rate is an *increase* over the local rate, which is represented by the following formula**:**

**% increase or "difference" = [(forum rate - local rate) / local rate] 100**

The calculation of the difference between local and forum rates for Mr. Webb in this case is based on the same formula.

5634323, at *17. Based on the quality of Mr. Webb's advocacy and years of vaccine program experience, and considering rates awarded by the United States District Court for the District of Idaho and rates awarded to Mr. Webb in the past, I find that Mr. Webb is entitled to $387.50 per hour, the median forum range. **Accordingly, I will award the median McCulloch rate of $387.50 per hour to Mr. Webb for work performed in 2014-2015.**

    b.        **Attorneys' Fees—Reasonable Hours Expended**

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (Fed. Cl. 2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cl. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).

A special master has "wide discretion in determining the reasonableness" of attorneys' fees and costs. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). In making reductions, a line-by-line evaluation of the fee application is not required. Wasson, 24 Cl. Ct. at 484. Special masters may rely on their experience with the Vaccine Act and its attorneys to determine the reasonable number of hours expended. Id. Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorneys' fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521.

    i.        **Attorney Curtis Webb**

Petitioner requests compensation for 143.1 hours of work performed by Mr. Webb on this matter. Pet'r's App. at 9. Respondent contends that Mr. Webb's hours should be reduced because of excessive research beginning at the outset of the case, which respondent contends is duplicative of research performed later in the case.[13] Resp's Opp. at 7-8. Respondent also states that a limited process occurred in this case—petitioner filed the claim, obtained an expert report, and had just begun assembling damages information at the time of filing the interim fees motion. Id. at 9.

On review of petitioner's application and billing log, I find the number of hours expended reasonable. Petitioner submitted an adequate log of the hours and dates of services performed on this case, and the name of the person providing the service. See Pet'r's App., Attachment A. I note, however, that petitioner's billing log could be more detailed with respect to pairing smaller blocks of time to particular tasks. For example, the time log indicates that counsel spent six hours on April 30, 2014, on which day he "[r]eceived e-mail from client: re: Dr. Mignot as

---

[13] Respondent notes that "[b]ecause of the vague billing entries, it is difficult to tell what hours were devoted to research versus standard case preparations, but research appears to be the lion's share of significant block billing at the outset of the case." Resp's Opp. at 8 (citing Pet'r's App., Attachment A at 2. 6 hours on 4/3/2014, 7 hours on 4/10/2014, 6 hours on 4/30/2014, 4 hours on 5/1/2014).

witness; H1N1/Narcolepsy research at Stanford; Prepared cause in fact case: review of medical literature; treating physician records/opinions on causation; expert witness choice; Assessment and proof on degree of disability; insurance coverage; Confererred by phone with client (x2), Drafted Notes: current condition, terms of insurance policies." Id. I emphasize that billing records should contain discrete entries for each task performed. On April 30, for example, it appears Mr. Webb performed at least four separate tasks—reviewing emails from the client, performing research, other preparation of the case, and conferring with the client by phone. Accordingly, Mr. Webb's time log should contain separate entries reflecting the time spent on each of these individual tasks so that the court can better assess whether the amount of time spent on each was reasonable. Nevertheless, given the complex medical condition of his client and the challenge of linking it to the vaccine, **I find that the number of hours Mr. Webb spent on this case is reasonable, and I will award attorneys' fees for 143.1 hours of work performed by Mr. Webb**.

### ii.  **Paralegal Alexander Webb**

Petitioner requests compensation for 27 hours of work performed by Alexander Webb, Curtis Webb's son, at a rate of $100 per hour. Pet'r's App. at 11. Alexander Webb is a senior at Utah State University in Logan, Utah, and has worked for Mr. Webb since March, 2015. Id. Petitioner states that the nature and quality of the work Alexander performs is similar to that performed by paralegals and law clerks, but a somewhat lower rate is requested because Alexander has not yet graduated from college. Id. at 12.

Respondent states that Alexander Webb appears to be a relative[14] who worked part time in Mr. Webb's office, is not a paralegal in the true sense of the term, and is still an undergraduate Resp's Opp. at 8. Respondent also asserts that the paralegal hours billed (e.g., 11 hours of highlighting) are redundant of tasks Mr. Webb and petitioner's expert should have performed in the time already billed, and should be reduced. Id.

I find that $50 per hour is a reasonable rate for the work performed by Alexander Webb. Although petitioner notes that her request for a rate of $100 per hour represents a rate that is already lower than the paralegal rate awarded in McCulloch, I find that an even lower rate is appropriate based on Alexander Webb's lack of experience. It does not appear that Alexander is a certified paralegal, and he is still an undergraduate. In addition, he has been working for Mr. Webb only since March 2015, and there is no indication that he has other experience with paralegal-type work. The paralegal rate of $135 per hour awarded in McCulloch represented a rate for the Conway, Homer & Chin-Caplan firm's "well-qualified, carefully chosen college graduates" who each had "several years at the firm doing exclusively vaccine work." McCulloch, 2015 WL 5634323, at *21. In addition, Mr. Webb's affidavit states that when he has used paralegals in the past, he has billed $100 for their work, a rate "based on what law firms in Idaho charge for *experienced* paralegals." Pet'r's App., Affidavit at 7. Alexander Webb's experience appears to be significantly less than that of the paralegals for whom rates were determined in McCulloch, and even appears less than paralegals for whom Mr. Webb has previously requested a $100 per hour rate. **Accordingly, I will compensate Alexander Webb for 27 hours of work at a rate of $50 per hour.**

---

[14] Alexander Webb is Mr. Webb's son. Pet'r's Reply at 10.

### c. Costs

The requirement that attorneys' fees be reasonable also applies to costs. Perreira, 27 Fed. Cl. at 34 ("Not only must any request for attorneys' fees be reasonable, so must any request for reimbursement of costs").

Petitioner requests $12,626.51 for attorneys' costs, and respondent has not objected to the costs sought. Upon review, I find the requested costs associated with the litigation of this claim reasonable. Accordingly, as requested, **I award $12,626.51 in attorneys' costs.**

## II. Conclusion

I award attorneys' fees and costs as follows:

| | |
|---|---|
| Requested Attorneys' Fees: | $62,086.50 |
| **Attorneys' Fees Awarded:** | **$56,801.25** |
|     Mr. Curtis Webb: $55,451.25 | |
|     Mr. Alexander Webb: $1,350.00 | |
| | |
| **Costs Awarded:** | **$12,626.51** |
| | |
| **Total Fees & Costs Awarded:** | **$69,427.76** |

**Accordingly, the court awards:**

(1) **A lump sum of $69,427.76 in the form of a check payable jointly to petitioner and petitioner's counsel of record, Mr. Curtis R. Webb, for attorneys' fees and costs.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment forthwith.[15]

**IT IS SO ORDERED.**

s/Thomas L. Gowen
Thomas L. Gowen
Special Master

---

[15] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of notice renouncing the right to seek review.