# In the United States Court of Federal Claims

No. 14-762V
(Filed Under Seal: August 17, 2016)
(Reissued: September 8, 2016)[*]

| | |
|---|---|
| KRISTINA GARRISON, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) |
| | ) |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) |
| | ) |
| Respondent. | ) |

Keywords: Interim Attorneys' Fees and Costs; 42 U.S.C. § 300aa-15(e)(1); Motion for Review; 42 U.S.C. § 300aa-12(e)(2)(B); Forum Rate Rule; <u>Davis County</u> Exception.

_Curtis R. Webb_, Twin Falls, ID, for Petitioner.

_Ryan Daniel Pyles_, Trial Attorney, with whom were _Voris E. Johnson, Jr._, Assistant Director, _Vincent J. Matanoski_, Deputy Director, _Rupa Bhattacharyya_, Director, and _Benjamin C. Mizer_, Principal Deputy Assistant Attorney General, United States Department of Justice, Civil Division, Torts Branch, Washington, DC, for Defendant.

## OPINION AND ORDER

KAPLAN, Judge.

This case is currently before the Court on the government's motion to review the Special Master's award of interim attorneys' fees and costs pursuant to the Rules of the United States Court of Federal Claims (RCFC), Appendix B, Vaccine Rules 23 and 24. ECF No. 42. For the reasons set forth below, the government's motion for review is **DENIED** and the Special Master's decision is **AFFIRMED**.

## BACKGROUND

### I. Proceedings Before the Office of Special Masters

On August 22, 2014, Kristina Garrison filed a petition pursuant to the National Vaccine Injury Compensation Act, 42 U.S.C. §§ 300aa-1 <u>et seq.</u> (2012) (Vaccine Act). Petition at 1, ECF

---

[*] In accord with the Rule of the Court of Federal Claims, App. B, Rule 18(b), this Opinion was initially filed under seal to afford the parties fourteen days to propose redactions. The parties did not propose any redactions. Accordingly, the opinion is reissued publicly in its original form.

No. 1. In that petition, Ms. Garrison alleges that as a result of receiving the trivalent influenza (flu) vaccination on October 28, 2011, she developed narcolepsy with cataplexy. Id. ¶¶ 1–2. She claims that her symptoms are the cause of her continued unemployment, and that they diminish her quality of life. Id. ¶¶ 8–9.

On October 29, 2015, Special Master Thomas L. Gowen issued a Ruling on Entitlement finding in favor of Ms. Garrison on the issue of liability. ECF No. 23. The Special Master reviewed Ms. Garrison's medical records and treatment records, as well as expert opinions on narcolepsy and cataplexy, and several pieces of medical literature. Id. at 1. The Special Master concluded that Ms. Garrison had provided reliable and persuasive evidence to support her claim and held that she was entitled to compensation. Id. at 2. The parties then began the damages phase of the proceeding, which is now ongoing. See Damages Order, ECF No. 24.

## II.      Petition for Interim Attorneys' Fees and Costs

Ms. Garrison is represented in this action by Mr. Curtis R. Webb, a solo practitioner in Twin Falls, Idaho, who has substantial experience representing Vaccine Act petitioners. See infra. On January 7, 2016, Ms. Garrison filed a petition for interim attorneys' fees and costs in accordance with 42 U.S.C. § 300aa-15(e)(1), ECF No. 27, requesting that the Special Master award $62,086.50 in attorneys' fees and $12,626.51 in costs incurred. Id. at 1–2. To determine the fee award, Ms. Garrison proposed that that Special Master apply a rate of $415 per hour, which she contended was the reasonable rate that would apply to Mr. Webb's services in the forum for this action—Washington, DC. Id. at 1, 9.

On March 1, 2016, the government filed a brief in opposition to Ms. Garrison's petition. ECF No. 31. Citing Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008), the government argued that any fee awarded to Ms. Garrison should be based on the local rate for Twin Falls, Idaho (which the government argued was $275 per hour), rather than the rate for Washington, DC, because counsel had performed all work on the case outside of Washington, DC, and because the difference between the local and forum rates was a substantial one. Id. at 3–4.

## III.     The Special Master's Decision

On April 29, 2016, Special Master Gowen issued his decision on interim attorneys' fees and costs. Decision on Interim Attorneys' Fees and Costs (Dec. on Fees), ECF No. 38. For the reasons set forth in his opinion, he awarded Ms. Garrison $56,801.25 in attorneys' fees and $12,626.51 for costs. Id. at 13. Critically for purposes of the motion for review, Special Master Gowen ruled that the difference between the forum rate for Mr. Webb's services (which he determined was $387.50 per hour) and the local rate (which he pegged at $327 per hour) was not "very significant" within the meaning of Avera. Id. at 9 (citing Avera, 515 F.3d at 1347–48). Therefore, he used the forum rate as the basis for determining reasonable attorneys' fees in this case. Id.

Special Master Gowen began his analysis by observing that a reasonable hourly rate under the Vaccine Act is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

reputation." Id. at 2 (quoting Avera, 515 F.3d at 1347–48). He noted that, under Avera, "a court should generally use the forum rate, i.e., the District of Columbia rate," when determining a fee award. Id. "However," he explained, "an exception to the forum rule applies where [as in this case] the bulk of an attorney's work is performed outside of the forum, and where there is a 'very significant' difference in compensation rates between the place where the work was performed and the forum." Id. (quoting Avera, 515 F.3d at 1349 (citing Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency (Davis County), 169 F.3d 755, 758 (D.C. Cir. 1999))).

The Special Master began his analysis of the prevailing market rate in Twin Falls, Idaho by reviewing the previous fee awards to Mr. Webb in vaccine cases, which Mr. Webb's affidavit identified as the basis for setting his local rate in this case. See Dec. on Fees at 3. He observed that in 2013 two special masters determined that $270 per hour was a reasonable local hourly rate for work that Mr. Webb performed in 2013. Id. Special Master Gowen adjusted that rate upward by 3.7%, which was the annual rate of growth in attorneys' fees since 2008 that he had applied in a previous case. Id. at 3 (citing McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mastr. Sept. 1, 2015)). He concluded that "if local rates are determined by adjusting the previously awarded $270 per hour rate in vaccine cases, a reasonable local rate for work performed in 2014-2015 would be $285 per hour." Id. at 4; see also Pet. for Interim Fees and Costs, Aff. of Curtis R. Webb ¶ 11 ("In my opinion, $285 an hour would be a reasonable local rate for work done in 2014–2015 for an attorney of my experience (31 years as an attorney), specialization, and reputation in Twin Falls, Idaho.").

Special Master Gowen, however, chose not to use the rates previously employed by other special masters as the basis for determining a reasonable local hourly rate in this matter. Instead, he examined the local rates approved in several decisions of the federal district court in Boise, Idaho, which Ms. Garrison had cited for the first time in her reply brief in support of her motion for fees. Dec. on Fees at 4–6 (citing Pet'r's Reply in Supp. of Her Mot. for Interim Attorneys' Fees and Costs at 3, ECF No. 33 (arguing that the cases established that the appropriate local rate actually "may be as high as $400 an hour")). The Special Master concluded that the cases cited "support a finding that a reasonable local rate for Mr. Webb's work in 2014 and 2015 is higher than $285 per hour." Id. at 5.

Two of the cases upon which the Special Master relied were civil rights cases decided in 2014 in which the district court judges had awarded $400 per hour to several attorneys with some 21 to 34 years of experience. Id. at 4 (citing Latta v. Otter, No. 1:13-cv-00482-CWD, 2014 WL 7245631, at *1–*4 (D. Idaho, Dec. 19, 2014), and Community House, Inc. v. City of Boise, No. 1:05-cv-00283-CWD, 2014 WL 1247758, at *6–*7 (D. Idaho, Mar. 25, 2014). Latta was a facial constitutional challenge to Idaho laws that defined marriage as the legal union between a man and a woman. See Latta, 2014 WL 7245631, at *1. Community House was an action brought by a shelter for the homeless in Boise, Idaho, alleging that its residents had been unlawfully evicted from the shelter in violation of the Fair Housing Act, the Idaho and United States Constitutions, and various laws of the State of Idaho. See Community House, 2014 WL 1247758, at *1. The two other cases the Special Master examined were slightly older breach of contract cases in which the district court judges had awarded fees to attorneys with 41 and 30 years of experience at rates of $300 and $350 per hour respectively. Dec. on Fees at 4–5 (citing J.R. Simplot Co. v.

Nestle USA, Inc., No. CV 06-141-S-EJL-CWD, 2009 U.S. Dist. LEXIS 62439 (D. Idaho, July 20, 2009) and LaPeter v. Canada Life Ins. of America, No. CV–06–121–S–BLW, 2007 WL 4287489 (D. Idaho, Dec. 4, 2007)).

The Special Master explained that, in his view, "the judgment of federal judges located in Idaho should be awarded significant respect, particularly on an issue such as local attorney rates with which they are presumably familiar." Id. at 5. He concluded, therefore, "that the rates awarded in Latta, Community House, J.R. Simplot, and LaPeter are appropriate points of reference for determining Mr. Webb's local rate." Id. at 6. In that regard, the Special Master opined that while the four cases "vary in complexity of subject matter and procedure," they "represent a range of complex litigation cases that I find to be generally of the same complexity as a vaccine case." Id. He concluded that the rates awarded in these district court cases "suggest that a reasonable local rate for complex litigation matters similar to Laffey Matrix[1] cases for Idaho attorneys with over 20 years of experience in 2014 and 2015 is approximately $400 per hour." Id. at 8.

In the four cited cases that Special Master Gowen used as points of reference, attorneys' fees were available only to prevailing parties. By contrast, attorneys' fees may be awarded in vaccine cases regardless of whether petitioners prevail on their underlying claims. See 42 U.S.C. § 300aa-15(e) (permitting the special master to award attorneys' fees and costs whether or not the special master awards the petitioner any compensation). Therefore, the Special Master reduced the $400 per hour rate awarded in the Idaho district court cases by 18.3% to eliminate what he called the "risk premium."[2] Dec. on Fees at 8. So reduced, he concluded that "a reasonable local rate for Mr. Webb's work performed in 2014 and 2015 is $327 per hour." Id.

---

[1] The Laffey Matrix is a "schedule of rates maintained by the Department of Justice to compensate attorneys prevailing in complex federal litigation" subject to fee shifting statutes. Rodriguez v. Sec'y of Health & Human Servs., 632 F.3d 1381, 1383 (Fed. Cir. 2011) (citations and quotations omitted).

[2] Special Master Gowen's risk premium analysis was first set forth in his decision in McCulloch. See 2015 WL 5634323, at *18–*19. As he explained in this case, to establish a "risk premium" of 18.3%, he compared the Laffey Matrix rates for Washington, DC to the forum rate for Vaccine Act cases in Washington, DC. Dec. on Fees at 6. He explained his calculation as follows:

> For attorneys with more than 20 years of experience, the Laffey rate is $520 per hour. Using the same framework as the Laffey Matrix, I determined that an appropriate rate range for practitioners in the Vaccine Program with more than 20 years' experience was $350 to $425. Thus, comparing the Laffey rate of $520 per hour for attorneys with 20 years' experience to the high end of the McCulloch range, $425 per hour, I effectively eliminated the risk premium by reducing the Laffey rate by approximately 18.3% for vaccine cases.

Id. (citations omitted).

Special Master Gowen then compared this local rate to the Washington, DC rate. In determining the forum rate, Special Master Gowen relied on a determination he had made in McCulloch that $350 to $425 per hour was "a reasonable range for attorneys with more than 20 years of experience" who take Vaccine Program cases in Washington, DC. Id. at 10 (citing McCulloch, 2015 WL 5634323). Special Master Gowen found that "[b]ased on the quality of Mr. Webb's advocacy and years of vaccine program experience"[3] Mr. Webb should be awarded the median forum rate in Washington, DC of $387.50 per hour. Id. at 11.

The Special Master then addressed whether the difference between the local rate and the forum rate was sufficiently large to require use of the local rate to calculate the award of fees consistent with Avera. He concluded that the local rate of $327 per hour is "not very significantly different" from the median forum rate of $387.50 per hour. Indeed, he concluded that whether the forum rate is $387.50, $415, or $425 per hour, the local rate "is different, but not very significantly so, from the forum rate range in McCulloch." Id. at 10 (original emphasis). Therefore, the Special Master ruled that, under Avera, the fee award should be calculated on the basis of the forum rate. Id.

## IV.    Request for Review

Pursuant to RCFC, Appendix B, Vaccine Rules 23 and 24, the government filed a Motion for Review of the Special Master's decision on May 31, 2016. Def.'s Mot. for Review (Def.'s Mot.), ECF No. 42. The petitioner filed a response, and oral argument was held on August 9, 2016.

## DISCUSSION

## I.    Jurisdiction and Standard of Review

The Court of Federal Claims has jurisdiction under the Vaccine Act to review a special master's decision upon the timely request of either party. See 42 U.S.C. § 300aa-12(e)(1)–(2). The court's jurisdiction extends to requests for review of a special master's decision awarding a petitioner interim attorneys' fees. See Avera, 515 F.3d at 1352; RCFC Vaccine Rule 13 (stating that a special master's decision regarding attorneys' fees is treated as "separate" for the purposes of obtaining review in the Court of Federal Claims). Therefore, this Court has jurisdiction over the government's motion for review of Special Master Gowen's April 29, 2016 decision on interim attorneys' fees and costs.

---

[3] The Special Master observed that "[a]mong vaccine practitioners, Mr. Webb has significant experience in the Program. He has 27 years of experience representing more than 275 petitioners in the National Vaccine Injury Compensation Program. In addition, he served on the Advisory Committee on Childhood Vaccines (ACCV) from 1992 to 1995, and is currently a member of the Vaccine Committee of the Advisory Council to the United States Court of Federal Claims. Special Masters have noted that his work is of high quality." Dec. on Fees at 8 (citations omitted).

The Court's scope of review of Special Master Gowen's decision is prescribed by statute. Pursuant to 42 U.S.C. § 300aa–12(e)(2), upon review of the record, the Court of Federal Claims may:

(A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,

(B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or

(C) remand the petition to the special master for further action in accordance with the court's direction.

As the court of appeals has observed, the standards set forth in 42 U.S.C. § 300aa–12(e)(2)(B) "vary in application as well as degree of deference." Munn v. Sec'y of Dep't of Health & Human Servs., 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). "Fact findings are reviewed . . . under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard." Id.

Pursuant to the Vaccine Act, a special master or the court may award reasonable attorneys' fees and costs incurred in the proceedings "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e)(1). An attorney fee award by either a special master or by the court is reviewed under the abuse of discretion standard. Hall v. Sec'y of Health & Human Servs., 640 F.3d 1351, 1356–57 (Fed. Cir. 2011). "An abuse of discretion exists 'when the trial court's decision is clearly unreasonable, arbitrary or fanciful, or is based on clearly erroneous findings of fact or erroneous conclusions of law.'" Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc., 714 F.3d 1289, 1293 (Fed. Cir. 2013) (quoting Fiskars, Inc. v. Hunt Mfg. Co., 279 F.3d 1378, 1382 (Fed. Cir. 2002)).

## II.   Merits

### A.   Determination of Attorneys' Fees in Vaccine Act Cases

The Federal Circuit has "endorsed the use of the lodestar approach to determine what constitutes 'reasonable attorneys' fees' under the Vaccine Act." Avera, 515 F.3d at 1347 (quoting Saxton ex rel. Saxton v. Sec'y of Health and Human Servs., 3 F.3d 1517, 1521). Under that approach, the special master or the court "first determines an initial estimate of a reasonable attorneys' fees by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1348 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)); see also Hall, 640 F.3d at 1353. "[A] reasonable hourly rate" is "'the prevailing market' rate defined as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Avera, 515 F.3d at 1348 (quoting Blum, 465 U.S. at 896 n.11).

The general rule under fee shifting statutes is that a reasonable hourly rate will be based on the "forum rate"—that is, the market rate of the locale in which the deciding tribunal sits. Avera, 515 F.3d at 1348. The forum rule is generally used because it is "neutral" and "will not work to any clear advantage for either those seeking attorneys' fees or those paying them." Donnell v. United States, 682 F.2d 240, 251 (D.C. Cir. 1982); see also Davis County, 169 F.3d at 759. Moreover, without the forum rule, "plaintiffs would be free not only to retain counsel from literally anywhere in the United States, but arguably the entire world . . . . The forum rate rule is the most sensible method of avoiding such excesses, while allowing parties to select competent counsel of their choice." Pub. Interest Research Grp. of N.J., Inc. v. Windall, 51 F.3d 1179, 1887 (3d Cir. 1995) (quoting Student Pub. Interest Research Grp. of N.J. v. Monsanto Co., 721 F. Supp. 640 (D.N.J. 1989)).

The court of appeals has held that in Vaccine Act cases, "a court in general should use the forum rate in the lodestar calculation," as "there is no reason to depart from the general rule that a court should apply a forum rate" when calculating attorneys' fees. Avera, 515 F.3d at 1349. The court of appeals, however, has also noted the existence of a "limited exception" to the forum rule in cases where the bulk of an attorney's work is performed outside of the forum and where there is a "very significant" difference between the forum rate and the local rate. Id. at 1349 (citing Davis County, 169 F.3d at 759). This limitation on the general rule—known as the "Davis County exception" in recognition of the case from which it originates—is designed to prevent windfalls and avoid the "'occasional erratic result where the successful petitioner is vastly overcompensated.'" Id. at 1349 (quoting Davis County, 169 F.3d 758–59). As the court of appeals has observed, "[a]pplying this exception ensures that attorneys are awarded reasonable compensation for their work and more appropriately reflects the purpose of a fee-shifting statute, especially in cases arising under the no-fault Vaccine Act." Hall, 640 F.3d at 1353.

There is no objective standard or bright line rule for determining when the difference between a local and forum rate should be considered "very significant" for purposes of invoking the Davis County exception. Indeed, the court of appeals has observed that setting such a rule "would be stifling and impractical." Hall, 640 F.3d at 1357. It has also noted that "making this determination is multifaceted and the experience of the special master is invaluable to it." Id. Thus, it has instructed that "[s]pecial masters should . . . continue to rely on the evidence before them and their own trial experience in similar litigations in making such a determination." Id.

### B. Special Master's Determination of Mr. Webb's Local Rate

The court of appeals has recognized that special masters have "discretion in determining the amount of a fee award" in light of their "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Saxton, 3 F.3d at 1521 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). Further, because "[s]uch fee determinations are within the discretion of a trial forum," they "are entitled to deference." Id. Thus, "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." Hines ex rel. Sevier v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 1518, 1528 (Fed. Cir. 1991).

In this case, the Special Master engaged in a multi-factor analysis to determine a reasonable local rate for Mr. Webb's services, and the basis for his decision is fully explained in his opinion. As described above, he considered the rates at which attorneys' fees had been awarded to Mr. Webb in several previous vaccine cases, took into account Mr. Webb's significant experience in vaccine litigation and the high quality of his work, and noted that there were only a limited number of attorneys in Idaho who take vaccine cases. Dec. on Fees at 3–4. In addition, the Special Master examined four Idaho district court decisions involving other fee shifting statutes, and used them as reference points to determine a reasonable local rate in this case. Id. at 4–5. Finally, he made downward adjustments to the rates awarded in the district court cases to address the "risk premium" that would play a part in determining the rates charged in cases—like those decided by the Idaho district court—where attorneys' fees are awarded only to prevailing parties. Id. at 5–8. Based upon his consideration of all of these factors, he determined that $327 per hour was a reasonable local rate for services by an attorney with Mr. Webb's level of expertise and high quality of representation. Id. at 8.

Notwithstanding this detailed analysis, the government contends that the Special Master abused his discretion in setting Mr. Webb's local rate at $327 per hour because the $327 per hour rate was higher than the rate Mr. Webb identified in his affidavit as a reasonable local rate for his services. Def.'s Mot. at 7. Moreover, the government argues that the Special Master did not provide an adequate explanation of why he rejected the rate specified in Mr. Webb's affidavit. Id. In addition, the government asserts, the district court cases upon which the Special Master relied were of greater complexity and impact than a vaccine case, and so do not support a rate of $327 per hour for a vaccine practitioner. Id. at 8.

These arguments lack merit. The government identifies no basis for precluding the Special Master from awarding fees at a rate higher than that initially sought by counsel, if other evidence of record supports such a rate. And there is no merit to the government's argument that the Special Master "utterly fail[ed] to explain" why he selected a local hourly rate ($327) that was higher than the one set forth in counsel's affidavit ($285). Id. at 8. To the contrary, the Special Master explained his reasoning in detail, observing that it was appropriate to use the cited district court cases as points of reference because although the cases "vary in complexity of subject matter and procedure" they were "generally of the same complexity as a vaccine case." Dec. on Fees at 6. Citing his earlier decision in McCulloch, he reasoned that many of the civil rights, employment discrimination, and Freedom of Information Act cases in which courts have awarded Laffey Matrix rates (with the concurrence of the U.S. Attorney for the District of Columbia) "are not as complex as, or no more complex than, vaccine cases in terms of their subject matter and evidence." Id. (quoting McCulloch, 2015 WL 5634323, at *18).

There is nothing "clearly unreasonable, arbitrary or fanciful" about the Special Master's conclusion that the district court cases upon which he relied involved a level of complexity analogous to vaccine cases. In fact, as the Special Master observed, two of the cases upon which he relied—J.R. Simplot and LaPeter—"did not involve particularly complex subject matter" at all. Id. at 7. Thus, "[i]n J.R. Simplot, the court noted that although the 'document production and organization may have been intensive, the legal issues presented—breach of contract, fraud, and the like—were not particularly novel or complex.'" Id. at 7 (quoting 2009 U.S. Dist. LEXIS

62439, at *34). "Similarly," the Special Master noted, the court in <u>LaPeter</u> stated that "[t]he nature of this case, essentially a breach of contract case, was not exceptional," and that the case was "more akin to the ordinary personal injury case." <u>Id.</u> (quoting 2007 WL 4287489, at *3).

The Court acknowledges that cases like <u>Latta,</u> which involved a controversial and cutting-edge constitutional issue (marriage equality), or <u>Community House,</u> which concerned the rights of homeless persons to be free from discrimination under the Fair Housing Act, are unique in terms of their profile and potentially broad reaching impact. But the Special Master's decision was based on his own litigation experience as well as his understanding of vaccine cases generally and this case in particular. His observation that while petitioners in vaccine cases need not demonstrate a constitutional violation, such cases do involve "difficult issues of causation," is entitled to deference. <u>Id.</u> at 7. Further, as a case cited by the government suggests, it is not unreasonable to compare vaccine cases to <u>Latta</u> and <u>Community House</u> in the sense that both "allow a lawyer to bring superior skill or experience to bear to justify a higher hourly rate, either through more efficient use of time or by more sophisticated understanding or development of issues." <u>Newman v. City of Payette</u>, No. 1:15-CV-00145-CWD, 2016 WL 1611430, at *4 (D. Idaho, Apr. 21, 2016); Def.'s Mot. at 8.

In short, the Special Master acted well within his discretion when he identified $327 per hour as the relevant local rate on the basis of a multi-factor analysis. The government's arguments to the contrary are without merit.

## C.  <u>The Special Master's Determination of the Forum Rate</u>

The Special Master's determination of the forum rate applicable to Mr. Webb's services was also within the bounds of reasonableness. In determining the forum rate, the Special Master relied upon his decision in <u>McCulloch</u>, where he found a forum rate range of $350 to $425 per hour to be a "reasonable rate range for attorneys with more than 20 years of experience, depending on the special master's judgment of the attorneys' years of experience in practice and in the Vaccine Program in particular, quality of advocacy in vaccine cases, and reputation in the legal community and community at large." Dec. on Fees at 10 (citing <u>McCulloch</u>, 2015 WL 5634323, at *17–*19.) The Special Master noted that the range was "designed to allow considerable discretion" based on a "multi-factorial" analysis. <u>Id.</u> He determined that the forum rate for 2014–15 for someone with Mr. Webb's skills and experience was $387.50 per hour, the median of the forum rate range established in <u>McCulloch</u>. <u>Id.</u> at 11. He based this determination on the quality of Mr. Webb's work, his experience litigating in the vaccine program, and the rates awarded to Mr. Webb in the past.

For purposes of this case, the government does not take issue with the forum rate range established in <u>McCulloch</u>. It argues, however, that the Special Master failed to articulate why Mr. Webb's hourly rate would lie in the median portion of that range rather than at $415 per hour. In support of its claim, the government notes that in <u>McCulloch</u>, Special Master Gowen set a rate of $415 per hour for attorney Kevin Conway, who had forty-five years of total experience, twenty-six years in the vaccine program and had served on various vaccine-related committees. Def.'s Mot. at 10–11. The Court finds this argument unpersuasive. The Special Master did not do a head-to-head comparison of the skills and experience of Mr. Webb and Mr. Conway; nor was

he required to do so in order to set a reasonable rate for Mr. Webb. It was sufficient that he clearly identified those aspects of a multi-factorial analysis that supported his decision to place Mr. Webb in the median range. Moreover, the Court notes that Mr. Conway has 45 years of overall experience as an attorney, compared to Mr. Webb's 31 years, and that—as Special Master Gowen's decision in McCulloch reveals—Mr. Conway is also an adjunct professor of law at Boston College. McCulloch, 2015 WL 5634323, at *19. Therefore, the Special Master's decision to assign an hourly forum rate to Mr. Webb that was some nine percent lower than the hourly forum rate he assigned to Mr. Conway was an appropriate exercise of discretion by the Special Master that the Court is in no position to second guess.

### D.  Special Master's Comparison of the Local Rate and the Forum Rate

After determining that the appropriate local rate for Mr. Webb's services was $327 per hour, the Special Master compared that rate with the forum rate range of $350 to $425 per hour. He concluded that "the difference between the local rates in Twin Falls, Idaho, and forum rates in Washington, D.C. is not 'very significant' and therefore Mr. Webb's hourly rate should be determined by reference to forum rates." Dec. on Fees at 9. The Court concludes that the Special Master acted within his discretion in making this determination.

First, the Special Master's decision is consistent with prior decisions addressing the applicability of the Davis County exception. As the Special Master observed, courts that have found the difference between local and forum rates to be "very significant" involved much greater disparities than exists in this case. Thus, "in Davis County, the D.C. rate sought was approximately 70% higher than local rates." Id. 10 (citing Davis, 169 F.3d at 757). "In Avera, the requested D.C. rate of $598 per hour was 'nearly three times' the local rate of $200—199% greater." Id. (citing Avera, 515 F.3d at 1350). And in Masias v. Sec'y of Health & Human Servs., 634 F.3d 1283, 1286 (Fed. Cir. 2011), the Federal Circuit affirmed an award based on local rates for Cheyenne, Wyoming, of $220 per hour in 2008, where the forum rate would have been $350 per hour, a 59% difference.[4]

The Special Master noted that in this case—by contrast—there was only an 18.5% difference between the local rate of $327 per hour and the $387.50 per hour forum rate applicable to Mr. Webb's services. Dec. on Fees at 9. He further noted that the $415 per hour forum rate requested by petitioner was 26.9% higher than the $327 local rate and that even if he applied the high end of the McCulloch forum rate range, $425 per hour, the difference would be 30%. Id. Comparing these differences to those at issue in Davis County, Avera, and Masias, he concluded that whether the forum rate is $387.50, $415, or $425 per hour, the local rate "is different, but not very significantly so, from the forum rate range in McCulloch." Id. at 10 (emphasis in original).

The Special Master's conclusion that the 18.5% difference between the local and forum rates that applied to Mr. Webb's services was not "very significant" for purposes of invoking the

---

[4] In Masias, the petitioner did not challenge the special master's determination that a 59% difference was "very significant."

Davis County exception was not an abuse of his discretion. The Davis County exception was intended to be "limited" and apply only to the "occasional erratic result where the successful petitioner would be vastly overcompensated." 169 F.3d at 758–59. Such "vast overcompensation" would have resulted if the forum rate had been used in Davis County because it was 70% higher than the local rate, and also in Avera where the forum rate was nearly three times as high as the local rate ($598 per hour as compared to $200 per hour). While the difference here, whether viewed as a percentage (18.5%) or in absolute dollars ($60.50 per hour), is not insignificant, it was not unreasonable for the Special Master to conclude—on balance— that the use of the forum rate would not result in the "vast overcompensation" of counsel.

Finally, the Court is not persuaded by the government's argument that the result of the Special Master's decision "is to essentially eliminate the Davis County exception entirely." Def.'s Mot. at 14. In considering the government's challenges, the Court has been mindful of the court of appeals' observations in Hall: 1) that "[t]he special master is . . . intimately familiar with the facts necessary to make the very significant difference determination;" 2) that "[t]he special master is better equipped to decide whether or not there is a difference between the two rates and the degree of that difference, as his or her 'superior understanding of the litigation'—something an appellate court lacks—is essential to this determination;" and 3) that "making this determination is multifaceted and the experience of the special master is invaluable to it." 640 F.3d at 1357. It is also mindful of the fact that the court of appeals has eschewed the use of bright line rules in making the very significant difference determination. Id. (finding that a bright line rule would be "stifling and impractical").

In short, a special master's decision in any one case cannot "eliminate" the Davis County exception because each request for fees turns on its own specific facts and circumstances. And, given the narrow scope of its review, the court of appeals' admonitions, and the care with which Special Master Gowen analyzed the issue in this case, the Court defers to the Special Master's determination that the rates in this case are not "very significantly different" and that use of the forum rate will not "vastly overcompensate" counsel for his work.

## CONCLUSION

On the basis of the foregoing, the government's motion to review pursuant to RCFC Vaccine Rule 23 is **DENIED**, and the Special Master's award of attorneys' fees is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge